**Steven GIBSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 83–1509, 87–348.**

District of Columbia Court of Appeals.

Argued Nov. 17, 1988.
Decided Oct. 25, 1989.

Calvin Steinmetz, Washington, D.C., with whom Thomas K. Clancy and Kenneth J. Rose were on briefs for appellant.

N. Paul Patterson, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. and Joseph E. DiGenova, U.S. Atty. at the time the brief was filed, Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and Mary Lou Leary, Donald Allison, Springfield, Mass., and Vincent W. Caputy, Washington, D.C., Asst. U.S. Attys., were on the briefs, for appellee.

Before NEWMAN, FERREN and STEADMAN, Associate Judges.

NEWMAN, Associate Judge:

A jury convicted Gibson of assault with intent to commit rape while armed; assault with intent to commit sodomy while armed; and kidnaping while armed. Judge Ryan sentenced Gibson to concurrent terms of five to fifteen years for the rape and kidnaping convictions, and twenty to sixty months for the sodomy conviction.

Gibson appealed his conviction (No. 83–1509), but subsequently filed discovery and new trial motions based on information that another person had committed the crimes for which he had been convicted; this court granted a stay of appeal (No. 83–1509) pending disposition of his motions in the trial court. In No. 87–348, Gibson appeals the denial of these motions. We have consolidated the two appeals for review purposes. We find no merit in the contentions raised on direct appeal (No. 83–1509).[1] However, we vacate the denial of the new trial motion and the denial of the discovery motion; we remand for further proceedings thereon.

## I.

At about 6 a.m. on the morning of March 9, 1982, sixteen-year-old Smith (not her real name) was on her way to school when a person she later identified as Gibson, approached her on the street and attempted to grab her bag. After struggling with Smith, her assailant pulled out a gun and forced her to accompany him to a wooded area nearby. On the way, her assailant attempted to shield his face with his left arm and Smith's bag and threatened to "blow [her] brains out" if she did not stop crying.

Once in the woods, her assailant made Smith remove her coat and pants, and then ordered her to lie down. He proceeded to touch her vagina and asked her whether she had ever had sex. After Smith responded no, he unzipped his pants, put his penis to her lips, and tried to insert his penis into her mouth. When Smith refused, her assailant stood, zipped up his pants, apologized for not knowing she was so young, and then left. Smith testified that the total time they were in the woods was one or two minutes, and that she was crying during most, if not all, of the entire assault.

After her assailant left, Smith put her clothes on and returned home, where her mother called the police. Later that day, the police brought a suspect and a set of photos to Smith's home, but she did not identify any of the men as her attacker. The next day, on March 10th, Smith viewed a large number of slides, none of which was a photo of Gibson, but she did not find a photo of her attacker. On September 27th, Smith looked at ten slides, one of them being a slide of Gibson. With respect to Gibson's photo, Smith stated that the eyes, complexion and mustache were the same as her attacker, but that he did not have a hat on. She ultimately concluded that she did not know if Gibson was her attacker; she did not think so. However, at a lineup fourteen days later, Smith identified Gibson as her attacker. Detective Green, who was involved in the investigation, was present during Smith's Septem-

1. We reject Gibson's contentions that the trial court erred by denying his motion for judgment of acquittal on the charge of assault with intent to commit rape; that the conviction for kidnapping merged into the convictions for the sexual crimes and, therefore, must be reversed if either sexual crime is affirmed; that the convictions for sexual crimes must be reversed because of the absence of corroborating testimony; that the trial court erred by instructing the jury to consider Gibson's interest in the outcome of the trial when weighing his testimony, and; that his sodomy conviction must be reversed because he was charged under a repealed sodomy statute.

ber 27th photo identification and the subsequent lineup identification of Gibson.

At trial, Gibson's defense was misidentification. He testified that although he could not specifically remember the events of March 9, 1982, he usually did not leave the house until after 10:00 a.m. Davis, with whom Gibson lived at the time of the offense, corroborated his testimony as to their daily routine, but could not remember the events of March 9th. The jury found Gibson guilty of assault with attempt to commit rape, assault with attempt to commit sodomy, and kirnapping, all while armed.

Following Gibson's conviction, Detective Green, a thirteen-year veteran police officer, approached defense counsel and told him that based upon his investigation of another person, Holt, in connection with a number of other sexual assaults, he was convinced that Gibson was not in fact Smith's assailant. Thereafter, defense counsel filed a new trial motion pursuant to Super.Ct.Crim.R. 33, on grounds of newly discovered evidence and a discovery motion to compel the government to disclose any information it had linking Holt to Smith's assault, and to provide a photo of Holt and a photo of the lineup at which Smith identified Gibson.

On October 31, 1985, at the first hearing on the discovery motion, defense counsel proffered that the prosecution had ordered the police officers engaged in the Holt investigation not to speak with him and furthermore, had told Detective Green not to sign an affidavit. The government conceded that an Assistant United States Attorney had been "concerned about ruining the investigation against Holt" and that he did not want Green to sign an affidavit, but maintained that no one had been ordered not to talk with defense counsel.

Nevertheless, the government argued that it had adequately responded to Gibson's concerns by reopening his case and thoroughly investigating any link between the Holt assaults and Smith's case. The

government stated that as a result of its internal investigation, it remained convinced that there was no evidence linking Holt to Smith's assault. The government also proffered that upon questioning Smith again, she had reaffirmed her identification of Gibson; that Gibson had failed a lie detector test concerning the case; and that Detective Green had told the prosecutor that he did not have any evidence linking Holt to Smith's assault. Characterizing Gibson's discovery motion as a "fishing expedition" based on no more than a "hunch of some police officers," Judge Ryan denied the motion because it lacked a factual basis, there being no supporting affidavit or testimony. Judge Ryan did not rule on the new trial motion.

Thereafter, defense counsel filed an amended motion for discovery and an amended new trial motion. The new discovery motion requested the court to order the government "to produce all exculpatory information in its possession," including, but not limited to, a photograph of the lineup at which Smith identified Gibson as her assailant[2]; "identification and summary of knowledge of persons who know the modus operandi of Holt"; and information concerning which persons saw Holt in the area where Smith was assaulted, as well as what they saw and when they saw him.

On January 6, 1987, a hearing on the amended new trial and discovery motions was held before Judge Hannon. In support of the new discovery motion, Gibson submitted an affidavit from Detective Green and a copy of the government's opposition to a defense motion to sever offenses in its then pending case against Holt. Gibson argued that the discovery motion to compel the government to produce all exculpatory information in its possession should be granted based on 1) the affidavit, in which Detective Green swore, *inter alia*, that Holt was Smith's assailant, and 2) the opposition memo, which revealed similarities between Holt's modus operandi and Smith's assault.

---

**2.** The government did provide Gibson with the lineup photo prior to the second hearing on

January 6, 1987.

The government reiterated the details of its reinvestigation into Gibson's claim and stated that on the basis of its own examination of the evidence, the crimes in which Holt was involved were dissimilar to Smith's assault. Judge Hannon denied the discovery motion on the basis that Gibson had failed to secure any new evidence since the earlier proceeding before Judge Ryan. Judge Hannon also denied the new trial motion.

## II.

On appeal, Gibson concedes that on the evidence obtained thus far, he cannot make the necessary showing as to all five of the criteria for obtaining a new trial based on newly discovered evidence. *See Smith v. United States,* 466 A.2d 429, 432–33 (D.C. 1983); *Godfrey v. United States,* 454 A.2d 293, 299 n. 18 (D.C.1982); *Tillery v. United States,* 419 A.2d 970, 972 (D.C.1980); *Wright v. United States,* 387 A.2d 582, 587 (D.C.1978). He claims that he can show 1) that the new evidence was discovered post trial; 2) that the evidence was made available to him by Detective Green, who had a working knowledge of both the Gibson and Holt cases, and that he was otherwise diligent in attempting to procure any new evidence; 3) that the evidence is not merely cumulative or impeaching; and 4) that the evidence is material to the issues involved. Without additional discovery, however, Gibson admits that he cannot meet the fifth and final requirement for a new trial; proof that the new evidence is "of such nature that in a new trial it would probably produce an acquittal." *Wright, supra,* 387 A.2d at 587 (quoting *Thompson v. United States,* 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951)); *see, e.g., Smith, supra,* 466 A.2d at 433.

Thus, Gibson does not assign error to the new trial ruling *per se;* rather, he claims that Judge Hannon erred in curtailing further investigation into the facts alleged in the motion and supporting documents by denying the discovery motion. In Gibson's view, the allegations set forth in these papers form the necessary predicate for granting the discovery request. In support of this assertion, Gibson proffers the affidavit, wherein Detective Green swore, *inter alia,* that "Holt has the same build, facial features, complexion, mustache, and the same piercing eyes as Mr. Gibson"; that a jacket matching the description of the jacket worn by Smith's assailant was found during the search of Holt's apartment; that a search of Gibson's home revealed no clothing, gun or other evidence that corroborated the theory that he had attacked Smith; that the lineup in which Smith identified Gibson was suggestive, and that her identification resulted from suggestive pretrial identification procedures and media coverage; that he and other police officers had maintained a surveillance of Gibson prior to his arrest and that Gibson had never been seen in the area where Smith was attacked; that Holt had also been watched and was often seen on the block where Smith was attacked, "not only at the same time of day that [Smith] was assaulted but also at night"; that Holt was from the area where Smith was attacked and had been observed cruising the bus stop area where the crime had occurred; that the modus operandi employed by the attacker in Smith's case was the same as that used in the more than sixty alleged "Holt" serial rapes that had taken place since 1967 in Virginia, Maryland and the District of Columbia; that the serial rapes had continued after Gibson was arrested, but stopped whenever Holt was incarcerated; and, that in his opinion, "if Smith was attacked, [Holt] was the attacker."

Gibson adverts to the government's opposition memo in Holt to demonstrate the "striking" similarities between Holt's modus operandi and Smith's assault: all of the Holt crimes occurred in the same area of town in which Smith's assault took place; Holt approached his victims in the same fashion as the assault in the Smith case—using a gun, he would come up to the victim and declare that it was a robbery or attempt to snatch her purse; in four of the five cases Holt told the victim he would "blow their heads off" if they did not cooperate, a phrase used in the Smith assault; in each case Holt tried to hide his face with

either his hand or an article of clothing, which was done in Smith's case; and finally, as in Smith's case, Holt forced his victims into a wooded area in three of five assaults and to a secluded area in the other two assaults.

Gibson argues that in light of the compelling evidence set forth in these papers, there is a sufficient basis for ordering further discovery on the issue of whether Holt, and not Gibson, was Smith's assailant. Accordingly, he contends, Judge Hannon's denial of the discovery motion rendered meaningless his right to a new trial; a result that implicates the same fundamental fairness and due process concerns underpinning the decision in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (requiring new trial based on violation of defendant's due process rights where counsel discovered, postconviction, that government had suppressed material, exculpatory evidence which had been requested). Here, Gibson argues that fundamental fairness and due process concerns are not satisfied by the government's own assessment of the evidence in its possession, but rather require that discovery be permitted to defense counsel so that it may conduct an independent investigation into the possible link between Holt and Smith's assault.

The government frames the issue in this appeal as whether the trial court properly exercised its broad powers of discretion in denying the motion for new trial. *Derrington v. United States,* 488 A.2d 1314, 1339 (D.C.1985) (appellate review is limited to a determination whether the trial court abused its discretion, i.e., whether its decision was reasonable), *cert. denied sub. nom, Grayson v. United States,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988). Under this standard, the government contends that Judge Hannon's decision denying the new trial motion should be affirmed, particularly in light of Gibson's acknowledgment that he cannot sustain his burden on the motion.

The government cites as additional support for affirmance of the trial court's ruling its own investigation into the contention that Holt was responsible for Smith's assault, which included assigning two investigators to review the entire case who came up with no new evidence; requestioning Smith, who remained "adamant and positive about her identification"; and administering a lie detector test that Gibson failed. Further, the government argues that discovery was properly denied on the basis of Gibson's own lack of diligence in searching out new evidence. For example, defense counsel made no attempt to call Detective Green as a witness at the hearings or to obtain the transcript of the factual proffers on the occasion of Holt's plea of guilty. Additionally, the government contends that even if there was some evidence that connected Holt to the Smith case, such evidence would have to be weighed against the force and credibility of Smith's testimony before the court could determine whether the new evidence would probably result in an acquittal. Next, the government asserts that Detective Green's affidavit consisted of personal opinions and legal conclusions on a series of offenses about which he claimed no personal knowledge.

Finally, the government says that Holt's signature modus operandi did not match the Smith assault because of the "patent" dissimilarities between the cases including: unlike Smith's assailant, Holt was generally very forceful; Holt made his victims repeat the phrase "fuck me daddy" during the rape; in most cases, Holt covered his victim's faces; Holt tried to cover the lower part of his face, whereas Smith's assailant tried to obscure his face with his arm and a book bag; Holt committed small armed robberies and not attempted purse snatchings, whereas Smith's assailant did not announce the robbery but simply grabbed for the bag; there was no indication that Holt's gun was similar to the gun used in Smith's assault; in one case Holt did not sexually assault the victim, a female police officer, but simply took her purse, lingered for a moment, and then ran away; and four of the five cases for which Holt was charged were committed more than eighteen months after Smith's attack.

### III.

The Superior Court Rules of Criminal Procedure do not specifically provide any post-conviction discovery procedure in aid of a new trial motion. Rule 16 applies to pretrial discovery procedure, *cf. Clifford v. United States*, 532 A.2d 628, 634 n. 5 (D.C.1987), although there is a "[c]ontinuing duty to disclose" evidence subject to this rule "prior to or during trial." Super. Ct.Crim.R. 16(c).

Notwithstanding the absence of express statutory language empowering courts to order post-conviction discovery, the Supreme Court's decision in *Harris v. Nelson*, provides authority for concluding that courts, by analogy to recognized rules of procedure or "otherwise in conformity with judicial usage," may fashion post-conviction discovery procedures as may be required to give meaning and substance to the objectives of the law. 394 U.S. 286, 298–300, 89 S.Ct. 1082, 1090–1091, 22 L.Ed.2d 281 (1968) (federal courts may utilize suitable discovery procedures to aid in disposing of habeas corpus petitions). There, the Supreme Court stated:

At any time in the proceedings, when the court considers that it is necessary to do so in order that a fair and meaningful evidentiary hearing may be held so that the court may properly "dispose of the matter as law and justice require," either on its own motion or upon cause shown by the petitioner, it may issue such writs and take or authorize such proceedings with respect to development, before or in conjunction with the hearing of the facts relevant to the claims advanced by the parties, as may be "necessary or appropriate in aid of [its jurisdiction] ... and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

We do not assume that courts in the exercise of their *discretion* will pursue or authorize pursuit of all allegations presented to them. We are aware that confinement sometimes induces fantasy, which has its basis in the paranoia of prison rather than in fact. *But where specific allegations before the court show reason to beleave that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry. Obviously, in exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the "usages and principles of law."*

*Supra*, 394 U.S. at 300, 89 S.Ct. at 1091 (emphasis added); *see* 8A MOORE'S FEDERAL PRACTICE & PROCEDURE ¶ 33.03[3], at 33–24 to –26 (2d ed.1989) (notwithstanding the absence of express authority for discovery in connection with a new trial motion based upon newly discovered evidence, the decision in *Harris* "confirmed the power of the trial court to provide the facilities necessary for an adequate inquiry, utilizing familiar discovery procedures where appropriate.").

■ We hold that the trial court may order post-conviction discovery in aid of a new trial motion by borrowing from familiar discovery procedures as appropriate, *"whether these are found in the civil or criminal rules or elsewhere in the 'usages and principles of law,'"* in order that the new trial motion receive fair and meaningful consideration. *Harris, supra*, 394 U.S. at 300, 89 S.Ct. at 1091.

■ In determining our review powers, we find Gibson's post-trial discovery motion best analogized to a Rule 16 discovery request and thus, review the denial of the motion for discovery under an abuse of discretion standard. *Wiggins v. United States*, 386 A.2d 1171, 1174 (D.C.1978), *United States v. Akers*, 374 A.2d 874, 878–79 (D.C.1977). In exercising its discretion in ruling on a discovery request, the trial court must not act "arbitrarily or willfully but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Johnson v. United States*, 398 A.2d 354, 361 (D.C.1979) (quoting *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75

L.Ed. 520 (1931)). The court's determination must be grounded on a firm factual foundation and supported by substantial reasoning. *Johnson, supra,* 398 A.2d at 364–65. In reviewing the trial court's exercise of discretion "[t]he appellate court adopts a deferential attitude ... because of the advantages that accrue from dealing with that decision in this manner. Should that advantage be overborne by other considerations, however, the court need not be reticent to declare that a trial court's determination constitutes an erroneous exercise of discretion." *Id.* at 366 n. 9 (citation omitted).

We hold that the trial court abused its discretion in denying Gibson's discovery motion. We base our conclusion on several factors. First, we have the unusual situation where a veteran police officer, who was involved in both the Gibson investigation and the Holt serial rape investigation, volunteered, by way of affidavit, substantial and compelling information concerning Gibson's contention that he was convicted for crimes committed by Holt. *Cf. Khaalis v. United States,* 408 A.2d 313, 360 (D.C. App.1979) (affirming trial court's denial of new trial motion without hearing because, *inter alia,* defendants' "proffers were insufficient ... [the] motions were conclusional" and they failed to "support their allegations with affidavits disclosing the source of their information or verifying the details."), *cert. denied sub. nom, Adams v. United States,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980).

Second, although the government's opposition memo to Holt's severance motion reveals some dissimilaries between Holt's modus operandi and Smith's assault, *see supra,* at 476, there exist sufficient similarities between the two, *see supra,* at 476 so as to warrant further investigation. This is particularly so since, accepting Detective Green's sworn statements as true, the details set forth in the memo represent only a small sample of the crimes for which the police hold Holt responsible.

Finally, Judge Hannon's ruling on the discovery motion was based primarily on his belief that defense counsel had produced no new evidence since the first hearing before Judge Ryan and that he was bound by the "law of the case" [3]:

All right, I'm unpersuaded, ... and I gather that what's been said here is not different from what Judge Ryan has heard, and rule of the law compels, and in the absence of being substantially persuaded differently, that I adhere to his ruling, I do, nothing different has been offered here today, and that would change his ruling, so your motion for discovery is denied.

This conclusion is unsupported by the record.

Judge Ryan denied the first discovery motion because defense counsel had failed to establish a factual foundation, either by affidavit or testimony, in support of the motion. Gibson cured this defect upon re-filing the amended discovery motion with Detective Green's affidavit and the opposition memo. However, Judge Hannon, without having read the transcript of the earlier hearing before Judge Ryan and thus unfamiliar with the details of that proceeding, ruled that these additions did not change the posture of the case or provide any new evidence.[4] On the contrary, we find that in comparison to defense counsel's proffer at the first hearing, the affidavit and the government's opposition memo to Holt's severance motion provided considerably more detailed and specific information forming the factual basis for Gibson's discovery request. Indeed, even the government acknowledged that "the specif-

---

3. The phrase "law of the case" "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). "The practice 'applies to principles of law' enunciated by the court, ... and does not bar consideration of the prior decision in the light of new evidence." *Naples v. United States,* 123 U.S.App. D.C. 292, 293–94 n. 1, 359 F.2d 276, 277–78 n. 1 (1966) (quoting 1B MOORE FEDERAL PRACTICE ¶ 0.404[1], at 402 (2d ed.1965)).

4. Judge Hannon relied upon the abbreviated oral recitations of counsel as to what had occurred at the earlier hearing.

ics that are included in the affidavit were not brought to Judge Ryan's attention." Transcript of proceeding before Judge Hannon, January 6, 1987, Supplemental Record No. 3, at 23.

In view of the court's error in assessing the factual situation on the discovery motion, we find reversal on the denial of the motion appropriate, particularly given the compelling facts justifying further discovery into the connection between Holt and Smith.[5]

Although the duty to disclose must be evaluated on a case by case basis, courts have required disclosure where, for example, the government was in possession of: 1) information relating to the possible guilt of one other than the accused, *Brady supra*, 373 U.S. at 87–88, 83 S.Ct. at 1196–1197 (accomplice's confession that he did the actual killing, even if it implicates defendant as an accessory, must be disclosed; *see United States v. Sedgwick*, 345 A.2d 465, 473–74 (D.C.1975)) (to require disclosure information must be more than "street rumor"; it must reach the "level of evidence."), *cert. denied*, 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976); 2) information that an eyewitness identified, by name or in an identification procedure, someone other than the accused as the perpetrator of the offense charged, *see Cannon v. Alabama*, 558 F.2d 1211, 1216 (5th Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), or stated that the accused was not the perpetrator, *see United States ex rel. Meers v. Wilkins*, 326 F.2d 135, 136–38 (2d Cir.1964), or gave any description of the perpetrator which differs in some material respect from the accused's appearance, *see Frezzell v. United States*, 380 A.2d 1382, 1385 (D.C.1977), *cert. denied*, 439 U.S. 931, 99 S.Ct. 319, 58 L.Ed.2d 324 (1978); 3) information that could be used to impeach a government witness, *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *see Coleman v. United States*, 515 A.2d 439, 447–48 (D.C. 1986) (prior inconsistent statements), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1987); *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765–766, 31 L.Ed.2d 104 (1972) (perjured trial testimony of government witness which is known to the prosecutor); *Bagley, supra*, 473 U.S. at 676, 105 S.Ct. at 3380 (bias); *Lewis v. United States*, 408 A.2d 303, 309 (D.C.1979) (impeachable convictions); *see Jackson v. United States*, 377 A.2d 1151, 1154 (D.C.1977) (drug use affecting witness' ability to recollect events); and 4) information which supports a claim of self-defense, *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■ We emphasize that, as in a pretrial discovery motion, concepts of constitutional "materiality," *see Bagley, supra*, 473 U.S. at 682, 105 S.Ct. at 3383, have no place in a post trial discovery motion. Once the appropriate discovery has been given, the standard governing the ruling on the new trial motion based on newly discovered evidence controls.

In light of the foregoing, we affirm the conviction, but vacate the denial of the motion for new trial and the denial of the motion for discovery. We remand for further proceedings consistent with this opinion.

---

**5.** Because we find an abuse of discretion in the denial of the discovery motion we do not reach the question whether the ruling violated Gibson's due process rights.