James D. BROWN, Appellant,

v.

UNITED STATES, Appellee.

John H. Banks, Appellant,

v.

United States, Appellee.

No. 95–CF–688, 96–CO–799, 96–CO–800 and 95–CF–879.

District of Columbia Court of Appeals.

Argued Dec. 4, 1998.

Decided Feb. 18, 1999.

Karen J. Krueger, appointed by this court, for appellant James D. Brown.

Jonathan E. Rubens, appointed by this court, for appellant John H. Banks.

Ann L. Rosenfield, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher and Robert A. Spelke, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and REID, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge.

John H. Banks and James D. Brown were convicted by a jury of armed carjacking, D.C.Code § 22–2903(b) (1996 Repl.), possession of a firearm during a crime of violence, D.C.Code § 22–3204(b) (1996 Repl.), carrying a pistol without a license, D.C.Code § 22–3204(a) (1996 Repl.), possession of an unregistered firearm, D.C.Code § 6–2311(a) (1995 Repl.), and possession of unregistered ammunition, D.C.Code § 6–2361(3) (1995 Repl.). Both Banks and Brown contend the trial judge committed reversible error by restricting counsel's efforts, after a motion *in limine*, from attacking the credibility of a government witness on the basis of an alleged pattern of untruthfulness. Brown also asserts that the trial judge committed error in denying his motion, pursuant to D.C.Code § 23–110 (1996 Repl.), alleging ineffective assistance of counsel. Lastly, Brown claims a *Brady* [1] violation. We affirm.

## I.

### A. Facts

The government's chief witness was Mr. Earlie Edmonds, Jr. Edmonds testified that in December 1994, he drove to the 1100 block of Queen Street, N.E., in his blue 1989 Chevrolet Cavalier, in order to sell a pair of his work boots. Edmonds claimed that he needed the money to help feed the children of his girlfriend, Ada Carter.

Edmonds first approached his cousin, Billy Jones, who stated that he did not need the boots. After leaving Jones' apartment, Edmonds stated that two men approached him whom he had never seen before. The men were later identified as Banks and Brown. After an unsuccessful attempt to sell his boots, Edmonds walked to his car and put his keys in the ignition. At that point, Edmonds testified that Brown swung the door open, and pulled a long-barrelled handgun out of his belt. Edmonds claimed that he was ordered to get out of the car. Once out of the car, Edmonds testified that Banks stuck a knife in his side. Edmonds further claimed that Brown ordered him to walk down the street without looking back. Edmonds stated that he ran to a nearby apartment, where his girlfriend lived, and called the police to report the alleged carjacking. Later that evening, a police officer pulled a car over in Northeast Washington matching the description Edmonds gave. Brown was driving the car, and Banks was in the passenger seat. A knife was recovered on Banks, and a long-

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

barrelled handgun found under the seat of the car.

The detective assigned to the case called Edmonds to tell him that he had two suspects to view. Edmonds went to the police station, and identified Brown as the man with the gun who carjacked him. Upon seeing Banks, Edmonds identified him with varying degrees of certainty.

## B. Pre-trial Ruling

Prior to the trial, counsel for Banks informed the judge that he had information that Edmonds had previously loaned his car to others in exchange for cocaine, and then called the police to report it stolen. Counsel also stated Carter would testify that Edmonds had loaned his car to her, and then called the police to report it stolen. Counsel further stated Carter would testify that she was aware that Edmonds had reported the car stolen on prior occasions when he had actually lent it in exchange for drugs, and that often strange items were left in the car.

The trial judge asked counsel for a theory of admissibility. Counsel replied that "it is basically, a propensity argument we're allowed to bring out." The judge requested specific authority, but counsel could cite none.

After a recess, the judge stated that he had done abbreviated research, but could find no basis for the admission of the proffered evidence. The judge stated that the proffered evidence could be admissible if counsel intended to use it to show a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. The judge, however, found none of these reasons to be applicable. The judge then ruled *in limine* that counsel could not refer to the proffered evidence in opening statements. Counsel was invited, if possible, to find some basis for the admission of the evidence, and then present his argument to the judge at a later time.

Before opening statements, counsel for Banks raised the issue again, claiming the evidence was admissible under FED. R. EVID. 404(b) to demonstrate the complaining witness' intent. The judge found no merit to this argument. Counsel did not pursue the issue thereafter.

## C. Appellants' Challenges to Edmonds' Credibility

On cross-examination, Edmonds was impeached on several factual questions. Edmonds admitted that the description of Banks' clothing that Edmonds gave during a 911 call differed from what Banks was actually wearing that night. In his 911 call, Edmonds described Banks as heavyset, when he was actually thin. Edmonds modified his testimony that he wanted to sell his boots. Rather, Edmonds stated that he was trying either to sell his boots or to use them for collateral for a loan. Edmonds admitted that he had previously been convicted of burglary and armed rape.

Appellants presented evidence that contradicted the account given by Edmonds. Countess Jackson, Edmonds' fiance, claimed that Edmonds told her Brown and Banks did not take his car, but rather that they were late in returning his vehicle. Barbara Jones, Brown's mother, stated that she was present when this conversation took place. Ms. Jones corroborated the testimony of Jackson that Edmonds stated he loaned the car to Brown. Billy Jones testified that Edmonds did not appear upset when Brown and Banks got into his car and drove away.

Further evidence challenging the credibility of Edmonds came from the testimony of Carter. Carter testified that Edmonds had a reputation in the community for being a chronic liar. She stated that on December 18, 1994, her children were not in need of food. Further, Carter testified that when he left her apartment on that night, Edmonds stated that he was looking for cocaine. Carter conceded that she and Edmonds were estranged.

## II.

### A. The Credibility Question

Both appellants contend the trial judge erred by restricting their efforts to impeach the truthfulness of the complaining witness. Appellants wanted to show that, in the past, the complainant allegedly had loaned his car

to other persons, and reported it stolen when the borrower had not returned it promptly. It was argued that such evidence was admissible to support an inference that the complaining witness acted similarly in this case.

■ Generally speaking, a party cannot present evidence that a person acted in a certain fashion on a prior occasion in order to show conformity with that behavior in a later setting. *Thompson v. United States,* 546 A.2d 414, 418 (D.C.1988). *See also* FED. R. EVID. 404(a). Our case law, however, recognizes that prior acts of an accused are admissible in certain specific circumstances:

> Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related that proof of the one tends to establish the other, and (5) the identity of the person charged with commission of the crime on trial.

*Drew v. United States,* 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964) (footnote omitted). *See also* FED. R. EVID. 404(b).

In this instance, the appellants did not offer to the trial court, nor do they argue before this court, that the evidence was admissible under *Drew.* Rather, before the trial judge, Banks largely asserted that the evidence was "a propensity argument we're allowed to bring out." Similarly, the appellants also urged that the evidence was admissible on a "common sense" theory of relevancy.

■ To support their contention that such evidence is admissible as a matter of common sense, the appellants rely on *Thompson, supra.* A review of that case, however, shows that it fails to offer any support:

> Although the fact that a person committed a crime on another occasion logically tends to show a disposition to commit a similar crime today, and thus perhaps to make it more likely that he committed the offense for which he is on trial, evidence of past misconduct is nevertheless inadmissible to prove his disposition to commit the similar crime, for the tendency of such evidence to prejudice the jury is thought to outweigh its probative value.

546 A.2d at 418. Thus, under *Thompson,* evidence offered on a theory of showing a propensity to commit similar acts is inadmissible. *Id.*

Appellants also assert that evidence of prior false reports by the complainant was admissible because such evidence would have a bearing on the veracity or truthfulness of the witness. Although appellants did not articulate this basis for impeachment to the trial judge, we agree that the latter evidentiary premise is sound.

■ Under our case law, a witness may indeed be impeached by being asked about prior bad behavior relevant to credibility. *See, e.g., Murphy v. Bonanno,* 663 A.2d 505, 508–509 (D.C.1995); *Portillo v. United States,* 609 A.2d 687, 690–91 (D.C.1992); *Roundtree v. United States,* 581 A.2d 315, 321 (D.C.1990); *Sherer v. United States,* 470 A.2d 732, 738 (D.C.1983). Where the prior bad behavior does not rise to the level of a criminal conviction, two requirements must be met before such questions are permissible: "(1) the examiner has a factual predicate for the question, and (2) the bad act bears directly upon the veracity of the witness in respect to the issues involved in the trial." *Portillo, supra,* 609 A.2d at 690–91 (internal quotation marks and brackets omitted). Particularly, an accused may ask a witness about prior false claims made under similar circumstances "where it is 'shown convincingly' that the prior claim is false." *Roundtree, supra,* 581 A.2d at 321 (quoting *Sherer, supra,* 470 A.2d at 738). Prior bad acts not rising to the level of a criminal conviction, however, cannot be proven by extrinsic evidence. *Sherer, supra,* 470 A.2d at 738 (citing *United States v. Akers,* 374 A.2d 874, 879 n. 9 (D.C.1977)). *See also* FED. R. EVID. 608(b).[2]

■ Here, appellants wanted to show that Edmonds had loaned his car to Carter, and to others, only to call the police and

---

2. In *United States v. Cohen,* 888 F.2d 770, 776 (11th Cir.1989), the court noted that Fed.R.Evid. 404(b) cannot be used to prove only propensity.

The rule, however, is inclusive and may encompass evidence offered by the defense involving behavior of a witness other than the defendant.

report it stolen. The factual predicate for the incident concerning Carter comes from her affidavit. In her affidavit, Carter reported that the incident occurred on New Year's Eve 1994 when Edmonds allegedly lent his car to her to buy groceries, but then reported it stolen. Given this factual proffer, there was enough of a predicate for appellants to question Edmonds about this allegation. That a person would be willing to make a false police report bears directly on the credibility of that person as a witness. Therefore, the appellants could have asked Edmonds directly about the alleged false report concerning Carter. Her statements as to other incidents, however, could not be the basis for presenting extrinsic evidence. *Sherer, supra,* 470 A.2d at 738.

## B. Standard of Review

■ The procedural circumstances of this case cause us to consider the appropriate standard of review. In an adversarial proceeding, as here, it is counsel's obligation to prepare and represent a party's position on material questions at issue before the court. This is so whether the issue involves an affirmative premise or statement of objection. *See* Super. Ct.Crim. R. 51. "The function of the statement of premise [for] of the objection is, first, to signify that there is an issue of law, and secondly, to give notice of the terms of the issue." 1 WIGMORE ON EVIDENCE § 18 (Tillers Rev.1983). In so doing, the trial judge is given the opportunity to consider and decide the question presented. It is intended that a trial advocate address such matters competently and contemporaneously to enable appropriate appellate review. *See Baxter v. United States,* 640 A.2d 714, 717 n. 3 (D.C.1994). Where an objection at trial level is based on different grounds than those presented to this court, this court may review under a "plain error" standard. *(Michael C.) Johnson v. United States,* 616 A.2d 1216, 1232 (D.C.1992), *cert. denied,* 507 U.S. 996, 113 S.Ct. 1611, 123 L.Ed.2d 172 (1993) (citing *Harris v. United States,* 602 A.2d 154, 159 (D.C.1992)).

In determining our standard of review in a particular case, our effort is to take a balanced approach. We do not seek to apply plain error review in a rigid fashion which elevates form over the practical dynamics of trial litigation. Nonetheless, we should not unduly relax settled concepts which require counsel to act competently in researching and preparing questions inherent in cases presented to the court. We observe in this instance that, before trial, counsel had the opportunity to consider and prepare the theories of admissibility of the evidence they sought to offer. The trial judge also permitted the attorneys representing appellant to revisit the issue and raise it at a later time. *See Butler v. United States,* 688 A.2d 381 (D.C.1996). We appreciate, at first blush, that although evidence pertaining to propensity and credibility are often interwoven, the doctrines controlling the purposes, admissibility and use of each kind of evidence are different. Given the record in this case, we observe that the question at issue was raised with the court in broad terms. We decline therefore to apply plain error review, but rather review the issue on the merits.

■ We start with the premise that "the Sixth Amendment guarantees to a defendant in a criminal prosecution the right to be confronted with the witnesses against him." *Lawrence v. United States,* 482 A.2d 374, 376 (D.C.1984) (citing *Davis v. Alaska,* 415 U.S. 308, 314, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Central to that right "is the opportunity to cross-examine government witnesses against the defendant." *Id.* Of course, one function of cross-examination is to "impeach the veracity of the witness," 1 McCORMICK ON EVIDENCE § 22 (4th ed.1992), and test the witness' truthfulness, CHRISTOPHER B. MUELLER & LAIRD KIRKPATRICK, EVIDENCE 577 (1995).

The primary defense in this case was that the complainant was not a credible witness:

(1) Ada Carter, a former girlfriend of the complainant, testified that he had a reputation for being a chronic liar. She contradicted his statement that he was seeking food for her children.

(2) Edmonds' fiance testified that complainant told her that appellants borrowed the car, but did not take it without permission.

(3) The mother of one of the appellants testified similarly.

(4) Edmonds changed his story on cross-examination. While testifying that he wanted to sell his boots on direct examination, on cross-examination Edmonds stated that he was looking to use them for collateral for a loan.

(5) Appellants showed inconsistencies in Edmonds' story. Through his own testimony and that of another witness, it was shown that he did not act as a man who had been carjacked immediately after the event.

(6) Edmonds was impeached on the basis of two prior criminal convictions.

▮▮▮ Assuming error, and viewing the total import of the evidence presented in support of the carjacking and other weapons offenses, we conclude that any error was harmless. With respect to the latter violations, the evidence is clear and virtually undisputed that the weapons, a knife and a handgun, were recovered on or about the appellants. These weapons were described as the same weapons used in the forcible taking of the vehicle. The remaining charge—armed carjacking—was considered by the jury in light of an extensive frontal attack on the complainant's credibility. Whether the witness was to be believed, and to what extent, was vigorously argued by appellants. Complainant's version of the crime, his reputation for truthfulness, his past behavior with friends, and his history of criminal convictions, were all ventilated for the jury's consideration. The jury necessarily weighed several aspects of complainant's credibility in reaching its verdict. It cannot reasonably be argued that complainant's credibility was overlooked or that a little more on the subject would not have been cumulative. Accordingly, we conclude that the error, which we have assumed, would not have affected the verdict, and was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## III.

Brown next contends that the motion to vacate his conviction should have been granted due to ineffective assistance of counsel. Particularly, Brown complains that his counsel should not have advised Brown against testifying on his own behalf.

▮▮▮ In order to obtain relief for a charge of ineffective assistance of counsel, the prisoner must show: ·(1) that counsel's conduct was deficient; and (2) that the deficiency prejudiced the prisoner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show that counsel's conduct was deficient, the prisoner must show that the conduct fell below "reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and examine the conduct in light of "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 689–90, 104 S.Ct. 2052. "In general, the constitutional adequacy of counsel's representation must be viewed in light of her total performance and not just on the basis of isolated acts." *Brewer v. United States*, 609 A.2d 1140, 1142 (D.C.1992), *cert. denied*, 506 U.S. 1068, 113 S.Ct. 1019, 122 L.Ed.2d 166 (1993) (internal quotations and brackets omitted). *See also Curry v. United States*, 498 A.2d 534, 540 (D.C.1985).

▮▮▮ In advising a client whether to testify on his own behalf, it is proper for trial counsel to consider whether his client could be impeached with a criminal record. *See, e.g., Brewer, supra,* 609 A.2d at 1143 (noting accused could have been impeached with an extensive criminal record). Further, in assessing counsel's conduct, it is proper for the court to consider whether *indirect evidence* was admitted tending to support the accused's case theory. In this case, Brown would have testified that Edmonds loaned the car to him in exchange for cocaine. Trial counsel advised Brown, *inter alia*, that he could be impeached with a prior misdemeanor conviction, that he could also be impeached with a pre-arrest statement given to the police which failed to mention the exchange of cocaine, and that he could risk exposure to prosecution for distributing

drugs. Further, trial counsel succeeded in admitting other evidence that corroborated Brown's theory that this was not a forcible carjacking. Given the total performance of counsel, therefore, we cannot say that the trial judge erred in concluding that there was no ineffective assistance of counsel.

## IV.

 Finally, Brown contends the trial court committed error in denying his motion to vacate his conviction without permitting discovery and holding an evidentiary hearing. Brown contends that he was entitled to such relief because the prosecution violated *Brady, supra* note 1,[3] by withholding information that the complaining witness had an interest in testifying for the prosecution.

A trial judge may permit post-conviction discovery. *Gibson v. United States,* 566 A.2d 473, 478 (D.C.1989) (citing *Harris v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)). The duty of the court to provide for such relief arises "where specific allegations before the court show reason to believe that the prisoner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief ...." *Harris, supra,* 394 U.S. at 300, 89 S.Ct. 1082. A denial of post-conviction discovery is reviewed for an abuse of discretion. *Gibson, supra,* 566 A.2d at 478. Discretion must be exercised "with regard to what is right and equitable under the circumstances and the law, and directed by reason and conscience of the judge to a just result." *(James) Johnson v. United States,* 398 A.2d 354, 361 (D.C. 1979) (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931)). It is permissible for a trial judge to deny a post-conviction discovery request where the prisoner's claims are "overly broad, and spec-

ulative." *Brooks v. United States,* 683 A.2d 1369, 1371 (D.C.1995).

As the trial court found, Brown's theory, and the support for it, was speculative. Carter gave no basis of personal knowledge for the key portion of her affidavit. Thus, there was no reason to believe that, if the facts were fully developed, Brown would be entitled to relief. Accordingly, the denial of post-conviction discovery was not error.

Based on the foregoing, the convictions are affirmed.

*So ordered.*

---

**3.** The Court in *Brady* held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. Evidence that an accused can use to impeach a government witness falls within the *Brady* rule. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

Brown asserts that three weeks prior to the trial, Edmonds' car was involved in a hit and run accident, and that drugs were found in the car. The implication of Brown's theory is that the government chose not to pursue charges against Edmonds because he was the key witness in this trial. In order to prove this theory, however, Brown claims that he required post-conviction discovery.