*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CM-0611


ESTIFANOS T. MEDHIN, APPELLANT,

V.

UNITED STATES, APPELLEE.


Appeal from the Superior Court
of the District of Columbia
(2020-DVM-001277)

(Hon. Jennifer M. Anderson, Trial Judge)

(Argued December 5, 2023                    Decided February 8, 2024)

*Thomas G. Burgess* for appellant.

*Chimnomnso N. Kalu*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *John P. Mannarino*, and *Patricia-Joy Mpasi*, Assistant United States Attorneys, were on the brief, for appellee.

Before EASTERLY, MCLEESE, and SHANKER,* *Associate Judges*.

---

* Associate Judge AliKhan was originally assigned to this case. Following her appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Judge Shanker has been assigned to take her place on the panel.

EASTERLY, *Associate Judge*: Estifanos Medhin, who was convicted after a bench trial of misdemeanor simple assault and sentenced to one year of probation in lieu of the authorized maximum of six months' incarceration, challenges the Superior Court's denial of his pre-trial motion for jury trial. Mr. Medhin's conviction triggered a five-year ban on possessing a firearm in the District under D.C. Code § 22-4503(a)(6). On appeal, Mr. Medhin argues that this penalty, which he asserts implicates his fundamental right to bear arms under the Second Amendment, is sufficiently serious to trigger his Sixth Amendment right to a jury trial under *Blanton v. City of N. Las Vegas*, 489 U.S. 538, 543 (1989) (explaining that a defendant may rebut the presumption that a petty offense punishable by less than six months' imprisonment does not trigger the right to a jury trial if they "can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one"). We hold that the Superior Court did not plainly err in failing to hold a jury trial in Mr. Medhin's case because it is not clear under current law that a temporary, geographically limited firearm ban transforms an otherwise petty offense into an offense triggering the right to a jury trial. (Mr. Medhin does not challenge the constitutionality of D.C. Code § 22-4503(a)(6) on Second Amendment grounds and

we express no view on that issue.)  We therefore affirm the judgment of the Superior Court.

## I.    Facts and Procedural History

On October 7, 2020, Mr. Medhin was charged by information with misdemeanor sexual abuse and simple assault, based on allegations by the complainant that Mr. Medhin had touched her vulva, over her clothes,[1] and stated that he was going to rape her.  Both offenses carry a maximum sentence of 180 days, or six months, incarceration.  D.C. Code §§ 22-3006, 22-404(a)(1).  Because Mr. Medhin and the complainant lived in the same residence, both offenses also constituted an "intrafamily offense," as that term was previously broadly defined. *See* D.C. Code § 16-1001(8) (2009) (defining "intrafamily offense" as "interpersonal, intimate partner, or intrafamily violence") & § 16-1001 (6)(A) (2009) (defining "interpersonal violence" as "a criminal offense that is committed . . . upon a person . . . [w]ith whom the offender shares or has shared a

---

[1] The complainant alleged that Mr. Medhin had touched her "vagina," but given that the contact was made over her clothes and the vagina is an internal organ, we understand her to have meant that Mr. Medhin touched her vulva. *Cf. Roberts v. United States*, 216 A.3d 870, 874 (D.C. 2019) (noting that it was unclear in that case whether the complainant "was using the term 'vagina' in its precise anatomical sense or more colloquially to refer to the vulva").

mutual residence") [2]; *see also Shewarega v. Yegzaw*, 947 A.2d 47, 52 (D.C. 2008) (concluding that the term "mutual residence," as used in D.C. Code § 16-1001, applied to parties who had no relationship but lived in the same boarding house).

After the Superior Court scheduled a non-jury trial for June 15, 2022, Mr. Medhin requested a jury trial, pursuant to the Sixth Amendment. Because he is a lawful permanent resident with a prior conviction for a crime of moral turpitude, Mr. Medhin stated that, if he were to be convicted either of sexual abuse or simple assault, he could be deported. Relying on this court's decision in *Bado v. United States*, 186 A.3d 1243 (D.C. 2018) (en banc), Mr. Medhin argued that the penalty of deportation is sufficiently serious to overcome the presumption that his offenses were petty and to trigger his Sixth Amendment right to a jury trial.

The government subsequently filed an amended information wherein it charged Mr. Medhin only with simple assault. The government separately filed an opposition to Mr. Medhin's request for a jury trial, arguing that the amended information rendered his arguments related to the sexual abuse charge moot and that

---

[2] D.C. Code § 16-1001 was amended in 2021 by the Intrafamily Offenses and Anti-Stalking Orders Amendment Act, D.C. Law 23-275. The statute now defines "intrafamily offense" as "[a]n offense punishable as a criminal offense against an intimate partner, a family member, or a household member," D.C. Code § 16-1001(8)(A), and defines "household member" in pertinent part as "a person with whom, in the past year, the offender . . . [s]hares or has shared a mutual residence[,] and . . . maintained a close relationship, beyond mere acquaintances, rendering application of the statute appropriate," D.C. Code § 16-1001(5B)(A).

simple assault is not a deportable offense because it is not a "crime involving moral turpitude" and does not constitute a "crime of domestic violence" within the meaning of that term under the Immigration and Nationality Act. Mr. Medhin did not file a response. Two weeks later, the Superior Court rejected Mr. Medhin's jury demand. Acknowledging Mr. Medhin's argument that the deportation consequence of an offense could rebut the presumption that an offense is petty and ineligible for a jury trial, the court ruled that simple assault, the only charge Mr. Medhin faced, is not a deportable offense.

The Superior Court held a bench trial on August 8, 2022. After crediting the complainant's testimony over Mr. Medhin's, the court found Mr. Medhin guilty of simple assault and sentenced him to ninety days' incarceration in favor of one year's supervised probation. The court also informed him, "[b]ecause this is a crime of domestic violence, you may not own or possess a firearm." Mr. Medhin timely appealed.

## II. Analysis

Upon Mr. Medhin's conviction, he automatically became subject to D.C. Code § 22-4503(a)(6), which provides that "[n]o person shall own or keep a firearm, or have a firearm in his or her possession . . . , within the District of Columbia, if the person . . . [h]as been convicted within the past 5 years of an intrafamily offense, as

defined in D.C. Official Code § 16-1001(8), punishable as a misdemeanor."[3] appeal, Mr. Medhin has abandoned his pre-trial claim that he was entitled to a jury trial under *Bado* because of the potential deportation consequences of his charged offenses; instead he argues that D.C. Code § 22-4503(6)'s "onerous and potentially deadly" deprivation of an individual's Second Amendment right to keep and bear arms, U.S. Const. amend. II, is sufficiently serious to transform his presumptively petty simple assault charge into a serious offense, thereby entitling him to a jury trial under the Sixth Amendment of the U.S. Constitution.

## A.    Preservation

Mr. Medhin's motion for a jury trial was based entirely on the potential deportation consequences of his charged offenses.  Nevertheless, he argues that his jury trial argument grounded in the Second Amendment is preserved on appeal because, pursuant to *Yee v. City of Escondido*, 503 U.S. 519, 535 (1992), "[h]e is entitled to make any arguments in support of" his general claim below that he was entitled to a jury trial.  The government argues that Mr. Medhin's jury trial claim is

---

[3] When the Superior Court informed Mr. Medhin at sentencing that he was banned from possessing a firearm, it did not mention D.C. Code § 22-4503(a)(6) or its five-year ban on possessing firearms for an individual convicted of an "intrafamily offense."  Because a seemingly temporally unlimited ban has no obvious legal or factual foundation, in assessing the seriousness of Mr. Medhin's offense and his right to a jury trial, we limit our focus to the self-executing five-year ban under D.C. Code § 22-4503(a)(6).

reviewable only for plain error. *See Grogan v. United States*, 271 A.3d 196, 212 (D.C. 2022) (reaffirming that where a criminal defendant fails to preserve a claim in the trial court, this court reviews only for "plain error"). On this record, we agree with the government.

"This court does not 'apply plain error review in a rigid fashion which elevates form over the practical dynamics of trial litigation.'" *Tinsley v. United States*, 868 A.2d 867, 883 (D.C. 2005) (Glickman, J., concurring in part and dissenting in part) (quoting *Brown v. United States*, 726 A.2d 149, 154 (D.C. 1999)). "We appreciate that difficult questions may . . . arise at trial with little warning, and . . . trial counsel . . . may be understandably taken off guard by a completely unexpected denouement." *Id.* (quoting *Salmon v. United States*, 719 A.2d 949, 953 (D.C. 1997)) (internal quotation marks omitted). "When that happens, our cases do not hold counsel to unrealistic standards of precision. Rather, we treat a claim as preserved for appeal so long as the judge is fairly apprised as to the question on which she is being asked to rule." *Id.* (internal quotation marks and brackets omitted). But the trial judge in Mr. Medhin's case was only "fairly apprised" of his argument that he was entitled to a jury trial because of the deportation consequences of the charges he faced, and not because of the Second Amendment implications. And this is not a case where leeway is warranted given the fast-paced nature of trial court proceedings.

The trial court was not "fairly apprised" of Mr. Medhin's argument that he was entitled to a jury trial because of the Second Amendment implications of a conviction for simple assault; that argument was not "fairly included" in an analysis of his argument that he was entitled to a jury trial because of the deportation consequences of a conviction for misdemeanor sexual abuse.[4] *See Gilchrist v. United States*, 954 A.2d 1006, 1012-13 (D.C. 2008) (holding that challenge to statement's admissibility as a declaration against penal interest under *Laumer* did not preserve constitutional claims); *see also*, *e.g.*, *Jones v. United States*, 990 A.2d 970, 980-82 (D.C. 2010) (holding that challenge to expert's qualifications did not preserve challenge to expert's methodology); *Comford v. United States*, 947 A.2d 1181, 1186-88 (D.C. 2008) (concluding that defendant's Rule 403 objection did not preserve hearsay argument). Mr. Medhin's Second Amendment argument requires both confirmation that his simple assault conviction is a qualifying "intrafamily offense" under D.C. Code § 22-4503(a)(6) (prohibiting anyone convicted of an intrafamily offense from possessing a firearm), and analysis of a whole body of post-*Heller* Second Amendment precedent. *See infra* Part II.B. But neither the

---

[4] In his motion for a jury trial, Mr. Medhin asserted that if he were "convicted of even one count of sex abuse . . . or alternatively of simple assault, he could be rendered deportable." But the entirety of his analysis related to the deportation consequences of a misdemeanor sex abuse conviction.

"intrafamily offense" provision of the statute nor this case law was brought to the court's attention even in passing.[5]

Moreover, after the government filed an amended information that no longer contained a charge carrying deportation consequences and filed an opposition to Mr. Medhin's motion for a jury trial on that basis, Mr. Medhin had ample time before the court ruled—two weeks—to file a response (or seek an extension of time) to explain that he was entitled to a jury trial because of the Second Amendment implications of D.C. Code § 22-4503(a)(6). But he did not file a response or seek an extension. By seemingly indicating that he had no further objection to a bench trial, Mr. Medhin failed to preserve this argument. *See Coleman v. United States*, 202 A.3d 1127, 1133-34 (D.C. 2019) (reviewing defendant's claim for plain error where defendant "initially requested a jury trial [on the stalking charge], [but] he did not object to the amended information and made no jury demand on the attempted stalking charge"); *cf. Parker v. United States*, 757 A.2d 1280, 1289 (D.C. 2000)

---

[5] Counsel suggested at oral argument that the Superior Court must have been "apprised" of the issue because it instructed Mr. Medhin at sentencing that he was prohibited from owning or possessing a firearm as a result of his domestic violence offense. But as explained above, the court did not cite the statute and referenced a seemingly temporally unlimited ban. *See supra* n.2. Moreover, there is no indication that the court was on notice either of the Second Amendment implications of its ban or that these implications might trigger Mr. Medhin's Sixth Amendment right to a jury trial under a *Blanton* analysis.

("[W]hen an objection has been overruled at an earlier stage of the trial and *the circumstances change* as the trial progresses, the defendant must *renew the objection on the basis of the changed circumstances* in order to preserve the claim . . . for appeal.") (emphasis added).

For these reasons, we conclude that applying plain error review is appropriate under the circumstances.

### B.   The Seriousness of the Firearm Penalty

Under plain error review, an appellant must show that the objectionable action was (1) error, (2) that is plain, (3) that affects the appellant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Grogan*, 271 A.3d at 212-13. Assuming without deciding that the Superior Court's denial of Mr. Medhin's motion for jury trial was error, we conclude that this error was not plain.

An error is plain if it is "clear or obvious, rather than subject to reasonable dispute." *Williams v. United States*, 210 A.3d 734, 743 (D.C. 2019) (quoting *In re Taylor*, 73 A.3d 85, 96 (2013)). The error must be "clear under current law," as in "at the time of our appellate review." *Id.* (internal quotation marks omitted). Because the maximum sentence for Mr. Medhin's simple assault offense is six months, it is within the "category of petty crimes or offenses which is [presumptively] not subject to the Sixth Amendment jury trial provision." *Blanton*,

489 U.S. at 541 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968)). That is, unless Mr. Medhin "can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one," he is not entitled to a jury trial under the Sixth Amendment. *Id.* at 543.

It is not "clear or obvious" under current law that a temporary, geographically limited prohibition on firearm ownership and possession, in conjunction with a six-month maximum sentence, is "so severe" as to reflect a determination by the D.C. Council that intrafamily offenses subject to that penalty are sufficiently serious to warrant a jury trial. Mr. Medhin contends that his "argument cannot be met without reckoning with *Heller*." Certainly the Supreme Court's discussion of an individual's right to bear arms under the Second Amendment in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), are relevant to our review for plain error to the extent that they speak to the severity of the penalty at issue. Indeed, we agree with Mr. Medhin that *Heller* and its progeny suggest that the intrafamily offense firearm ban is not de minimis: the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation[s]," and so long as Mr. Medhin resides in the District, the firearm ban

under D.C. Code § 22-4503(a)(6) makes no exception for Mr. Medhin's home, "where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 592, 628.  Yet we are aware of no case—and Mr. Medhin has not pointed to any—holding that a temporary firearm restriction is sufficiently serious to overcome the presumption that a petty offense does not warrant a jury trial under the Sixth Amendment.

More generally, this court's recent decisions discussing the right to a jury trial under *Blanton*—*Bado v. United States*, 186 A.3d 1243 (D.C. 2018) (en banc), and *Fallen v. United States*, 290 A.3d 486 (D.C. 2023)—do not provide Mr. Medhin with the foundation he needs to show plain error.  It is true, as this court stated in *Fallen*, that "neither the Supreme Court nor this court has held that actual physical containment is necessary to deem a penalty sufficiently severe," 290 A.3d at 496. And we decline to endorse the government's contention that a penalty cannot be sufficiently severe under *Blanton* absent a showing of "life-altering" consequences such as the physical separation from one's home and family attendant to deportation, *see Bado*, 186 A.3d at 1250-52, or the severe invasions of privacy and public humiliation attendant to sex offender registration, *see Fallen*, 290 A.3d at 496-99. Nonetheless, lacking any other examples, we cannot say that current law would clearly direct a trial court to find a temporary, geographically limited firearm ban sufficiently severe to entitle a defendant convicted of a misdemeanor to a jury trial.

Mr. Medhin urges us to rely on a case in which the Nevada Supreme Court concluded that, in amending the penalties attached to misdemeanor domestic battery to include a permanent prohibition on the possession or control of firearms, the Nevada Legislature "indicated that the offense . . . is serious" and, therefore, "one facing the charge is entitled to the right to a jury trial." *Andersen v. Eighth Jud. Dist. Ct.*, 448 P.3d 1120, 1124 (Nev. 2019). But he does not explain why a permanent ban is comparable to a five-year ban. The space between five years and an indefinite number of years is far too wide to characterize the seriousness of the former as "obvious" or "clear under current law."

Mr. Medhin also cites *Richter v. Fairbanks*, 903 F.2d 1202 (8th Cir. 1990). The fifteen-year ban on holding a driver's license at issue in *Richter* is closer to the five-year ban in Mr. Medhin's case but is still three times as long and addresses a different activity—the ability to drive, "which individuals in a modern society depend upon . . . for the pursuit of their livelihood." *Id*. at 1205. Accordingly, *Richter*, which is not binding precedent on this court, still does not provide the requisite support for "plain" error here.

If any error can be said to have occurred below, we hold that it was not plain. Because Mr. Medhin has failed to meet the second prong of the plain error test, we affirm the Superior Court's denial of Mr. Medhin's motion for jury trial.

*So ordered*.